MARIE L. BRADLEY, APPELLEE, V. WILLIAM BECKETT ET AL., APPELLANTS.

FILED JANUARY 16, 1929. No. 26265.

*J. E. Porter,* for appellants.

*V. N. Thomas, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

ROSE, J.

This is a controversy over the custody of a child named Anna J. Bradley who was born at Crawford, Dawes county, Nebraska, March 19, 1925. The child was the youngest of three daughters. The mother's name was Marie L. Brad-

ley. Twelve days after its birth Anna Beckett took it to the home of herself and her husband, William Beckett, in Crawford. It has been in their custody and care ever since. They are well along in years, are childless, and are not related to the Bradleys. When the infant was 17 months old its mother asked for it and the Becketts refused to give it up. Upon an application by the mother for its custody, a writ of habeas corpus was issued August 23, 1926. The conflicting claims of the mother and the Becketts were asserted in formal pleadings. After a full hearing in the district court for Dawes county, judgment was rendered in favor of the mother September 7, 1927, and the Becketts appealed.

Should the custody of the child be taken from the Becketts and awarded to its mother? This is the question presented by the appeal. In determining the issue, the best interests of the child are material considerations, but the rights of the mother as a natural guardian of her offspring may also be considered.

Marie L. Bradley urges her motherhood and her love for her child. She also contends that the custody of the Becketts resulted from their generosity and ability to give the child proper care, but that their right to custody was only temporary; that the mother has a suitable home and is able to support and rear her children properly. The Becketts take the position that they accepted the child with the consent of its mother without any obligation to return it; that mutual love and attachment for the child bind it to them and them to it; that they are better able to rear and provide for it; that they are willing to care for it permanently; that, if returned, it will not have a suitable home.

The child was born at the home of Joseph Thompson and wife, parents of Marie L. Bradley. Anna J. Bradley, the infant in controversy, was the third child. Its mother at the time was separated from her husband who was not then supporting his family. In a pending suit she procured a divorce and the custody of her three children. In pre-

paring to support them, while the Becketts were keeping the baby, the mother took a course in a beauty culture school in Chicago. Upon her return to Crawford she joined her sister in conducting a beauty parlor there and promptly made a demand upon the Becketts for her child. She then had her own home on a lot adjoining that of her parents, the beauty parlor being in the house occupied by the latter. She was a high school graduate and had attended the state university. At the time of the trial she was earning approximately $100 a month.

In addition to uncontradicted testimony that the Becketts were able and anxious to provide the child a suitable home and that they were proper persons to have its custody and care, witnesses testified that on different occasions Joseph Thompson, the grandfather, had cruelly punished the older daughters of Marie L. Bradley while they were in the Thompson home, the grandmother having temporary charge of the Bradley children at times when their mother was at work in the beauty parlor. That this punishment was unnecessarily severe was contradicted by other witnesses; but, whatever the fact may be, cruel punishment is not likely to be inflicted in the future, since the police department of Crawford inquired into the matter.

An examination of the entire record leads to the conclusions that the mother, when she demanded her child, and when she applied for the writ of habeas corpus, was a fit person to have its custody; that she is now able to support her children; that she has a suitable home for them.

The testimony of Anna Beckett indicates that she and her husband had a right to temporary custody only. She said on the witness stand that the mother, when demanding her child, asked for a bill of expenses. What then occurred was stated in the language of the witness Anna Beckett as follows:

" 'Well,' I said, 'you are not going to take her until I get her weaned and her teeth cut.' 'Yes,' she said, 'I am going to take her.' 'Well,' I said, 'if you are going to take her and going to be mean about it, you give me $2.50 a

day for every day I have had her.' 'Well,' she said, 'you will never get one dollar,' and I said, 'if you will let me keep her until we get her weaned and get her teeth, there would not be any expense, and you can take her.' "

This does not indicate that the mother had abandoned her child, or had forfeited her right to its custody, or that the Becketts had acquired a superior right. The entire burden of support did not fall on the Becketts. To some extent at least the mother or the grandparents furnished clothing and milk and did part of the washing. In the home of the Becketts the child would be deprived of the constant companionship and care of its mother and sisters. Out of compassion for the helpless infant and sympathy for the mother in a time of family trouble and pecuniary distress the Becketts gave the child not only a home but lavished upon it affection and care. The separation will no doubt be a distressing ordeal, but under the circumstances the best interests of the child and the natural rights of the mother seem to demand the sacrifice. This conclusion does not disparage the Becketts. They were prompted by the worthy impulses that keep open in humanity the spiritual fountains of generosity, sympathy and love.

AFFIRMED.